We're going to move on to the Salmoran case. If I'm not pronouncing it correctly, I'm sure you'll correct me. I may not, Your Honor. How does your client say it? Frutis Salmoran. Salmoran. Thank you, Your Honor. If you may please accord, my name is Matthew Archambault and I'm here on behalf of the petitioner. And if I could set aside three minutes for rebuttal. Three minutes it is. Go ahead, sir. Thank you, Your Honor. Today, what I think the two real issues are is whether or not the aggravated felony portion of the INA related to child porn is, or the New Jersey statute related to child porn, is overbroad and covers more areas than the federal definition of child porn. That's where I'd like to begin. There's obviously the issue of the child abuse. I think that would be a secondary. So where is it more broad? How is it more broad? It's overbroad because the federal, we kind of got to lose it because we just had a room full of school children here, it seemed like. They're gone. What do you need to say? There are some younger folks here, but I think they're okay. They're okay. Under the federal definition, they talk about the sevious exhibition of genitals and pubic area. Under the New Jersey definition, we're talking about nudity. They also talk about intimate parts, which includes breasts and buttocks and inner thigh, which is not included, are not genitals or pubic area. So I think that's kind of the baseline as to why what you can be prosecuted and convicted under New Jersey law is broader than what you can be convicted under federal law. So let me ask you this. Do you concede that your aggravated felony claim fails if we determine that you've not demonstrated realistic probability that New Jersey would apply the statute to conduct a false outside the federal offense? Well, two parts. One, I don't think the realistic probability test is really appropriate here. In Duenas-Alvarez, they use realistic probability. They talk about having a legal imagination, right? In Duenas-Alvarez, it is the counsel's recitation of what could happen was pretty imaginative and maybe very good advocacy, but it was imaginative. There's no imagination needed here. What about Singh? What about R. Singh? Well, Singh, I think, was dealing with a modified categorical approach. Well, I mean, it might technically have been, but you know the quote I'm talking about in Singh, right? What is it? It's the last footnote in Singh? Footnote 10. Footnote 10. Off the top of my head. I know. Well, I would just say, I think we... Just wait a second. Okay. Our time is your time. Thank you. I don't mean to rush you, Your Honor. Oh, no. It's no rush. So footnote 10 says, We recognize Moncrief approved of something akin to a realistic probability inquiry, but in that case, and in Duenas, the relevant elements were identical. Here, the elements of the crime of conviction are not the same as the elements of the general federal offense. The Supreme Court has never conducted a realistic probability inquiry in such a case. Accordingly, we believe this case is where the realistic probability language is simply not meant to apply. But in the body, this is on page 286 for the purposes of the record, the quote in the body of the opinion says the BIA erred in conducting a realistic probability inquiry and concluding otherwise. So is your point after having heard that that realistic probability is not a part of this calculus at all? I don't think it should be. And I don't think it should be because, again, what Duenas Alvarez is talking about is legal imagination. And to say that it's legal, you have to use legal imagination, that New Jersey wouldn't prosecute, for example, depictions of young children changing out of their bathing suits and showering, maid service, typically, or images of a 15-year-old girl with just her breasts exposed for purposes of sexual gratification, I don't think requires legal imagination. I think it requires simply reading the statute. I think it requires legal imagination to say New Jersey wouldn't prosecute some of those. But I do think that we've identified a couple cases which will point to that New Jersey does prosecute these types of behaviors. In State v. GFJFG, there are 13 counts. The first 12 are depictions, depictions of the plaintiff's or the criminal defendant's stepson and his children running around naked, playing basketball, showering, and whatnot. The third charge, or the 13th charge, which is a charge that's actually the child porn charge, is a stereotypically taken video of children changing out of their bathing suits, showering. The crux of his argument on appeal to that was that the trial judge should have instructed the jury that it was implicit in the statute that lascivious exhibition in general was necessary. Now, that was rejected because it's not an element, it's not a part of New Jersey law. He was convicted on that basically because he had heavy breathing, and they said that kind of demonstrated that it was for his own personal sexual gratification. So are you focusing on those two State cases for the proposition that there has to be a showing of realistic probability of actual prosecution? In the absence of that... I want to have it both ways, if I may. I'm married and I have kids. I have to argue an alternative. So I don't think realistic probability, for the reasons I stated, because it doesn't take legal imagination. But if you want to go there, if you want to go there, we have shown that New Jersey does punish types of conduct that would not be punished under the federal statute. And when you read the New Jersey State cases, there's no talk about lascivious exhibition of genitals. It's all about nudity. Now, of course, genitals comes up because they're talking about the facts of the case. The other case that we spoke about was State v. R.B., which was an individual serotypically taping his, I guess, his stepdaughter, who was 15 at the time, taking a shower. Now, there's nothing in there to say that there was a lascivious exhibition of that child's genitals. It could have been just a video. Well, there's nothing about the nature of the photographs at all, right? Well, that's if she was showered, that she was naked and showered. So the point I want to make there is it's just not an element. It's not. If it was, I think it would take legal imagination, as I can, to say if the video was only from her top up taking a shower, that New Jersey would have prosecuted that under their child porn statute. I'm a resident of New Jersey. I would hope that they would prosecute that under the child porn statute. Counselor, let's assume you're right on all of this as to child porn. Then you're at least eligible for cancellation removal, but you still have the child abuse crime to deal with. And we've said in Mondragon we're going to defer to the definition of child abuse under Chevron. So we had this definition for Velazquez Herrera and so on. Why is it that you think that having the child porn here doesn't count as exploitation? Maybe I can break this into two pieces. The first one is, can you tell me anything about the specific offense? What do we know about what he did factually? And then, whether we know anything about it or not, how does what he was convicted of match up or not match up with the exploitation requirement for the child abuse definition? Thank you, Donner. I think we're using a categorical approach for this. I know I've read recently some footnotes from this circuit, throwing some shade on it. But we're using a categorical approach. I'll be honest, I don't know anything about his offense. It's not in the record. What's in the record is a record of conviction, and that's what we look at when we look at the categorical approach. I'm not trying to be abstinent. I'm not trying to shy away from the question. I'll be honest, because I don't know. But what I think we do is... But then what happens given that Madrigal Gonzalez says we should give it Chevron deference? I mean, what happens to the whole Chevron deference issue? Well, I think we look at the least culpable act that you could be convicted under New Jersey law. And I'm going to go back to sort of the matter of state versus RV, the one where he's taken... Well, maybe a better would be the circuit from JFG, from the state, where he's taken the videos of the young boys playing and showering. But the number, the charge 13, was the one in the child court, and that was of unidentified boys changing out of their bathing suits and taking showers. The boys were never identified. He didn't sell the video. He didn't have to sell the video. He had to have it on his possession. It's for his own personal sexual gratification. It's gross. I'm not saying what it is. I just don't think it's shocking to me. Could you come back to the term exploit? How do you read the word exploit such that possession of pictures of naked kids, the least disgusting pictures of naked kids you can imagine, doesn't count as exploiting those children? Well, I think it would be exploitation if he was selling them, if he was distributing them around. If he's keeping them for himself, I think we fall a little bit short of exploitation. So what do you read the word exploit to mean? It's something that would be published, something that would be beyond, that would get the use of these images out more into the public than just on his personal video camera. Isn't that distribution? Well, I mean, I think they do, but it is, absolutely. Distribution is exploitation. Taking the films is exploitation, not distributing them. Selling them is exploitation. So what's the line that makes you say that possessing them or buying them or something like that, what makes it different? I wouldn't even say that. I think buying them, I'll come over to your side, because that would be involved in the trafficking and the distribution because you're getting it from another source, right? But all the indications here is that he was the primary source and he kept it for himself. I think that's the line. It's a very narrow, low line, or high line, I don't know where the line is. So as the primary source, you see Jay, he produced it? The facts of the case are that they were on his video camera. So it's production of this sort of material exploitation? Well, production, he took the video. So I'm not he. You mean Mr. Silmarone or which case are you talking about? No, no, Mr. JFG, where he took the video. So he kept it there for himself. The facts of the case kind of bear that out, and that was part of his argument on his appeal. If there's nothing more, I will thank you, Your Honor. Of course. Good afternoon. May it please the Court, Lindsay Dunn on behalf of the respondent, the Attorney General. Here, Petitioner's Statute of Conviction for Possession of Pornography under New Jersey Statutes Annotated 2C244B5B is a categorical match both to the aggravated felony of child pornography as defined in the federal statutes and also to the crime of child abuse as defined by the board and as this Court has adopted. Let's assume for a moment that it's not a categorical match that you're arguing. So let's assume that the state statute is broader than the federal counterpart. Does Sal Moran nevertheless need to demonstrate a realistic probability that New Jersey would apply the statute to that broader conduct to succeed on his aggravated felony claim? Yes, Your Honor. The government interprets the realistic probability test as actually part of the categorical approach analysis. If the Court were to look at the language in Moncrief, where the Supreme Court is describing the categorical analysis, the Court says that it's qualified by also looking at the state's application of a particular statute and then goes on to give the example of where you have a federal statute that has an exception for antique firearms and a state statute that doesn't. The Supreme Court says there, then, as part of the categorical analysis, the issue becomes how the state actually applies a statute. So not whether or not there's a question of over-breath on the face, but also the question of, under Gwyneth's alibis, the particular application. I did also want to point out to the Court. So let's stay with that, the particular application, as you've just said. So what does realistic probability mean? Does realistic probability mean that we have to look to see whether there would be a realistic probability of an actual prosecution? Is it more like a per se rule that, say, once you get to the question of whether there would be a prosecution, that's enough? Tell me what your understanding of the term is and how does it apply. Your Honor, my understanding of the term under that language in Moncrief is whether or not the petitioner here can point to actual instances of prosecution. And here the government disagrees with his characterization of the two cases that he cites. He simply cannot do that here. Do you think our case in Singh elucidates that point at all? I would distinguish saying, one, it's a modified categorical approach. So you're looking beyond simply what the face of the statute is. You have the opportunity to look beyond the statute. Two, I would distinguish Singh because say Singh hadn't been a modified categorical approach case. There you have a case dealing with drug statutes where below the petitioner had been convicted based on a synthetic or a drug that was not part of the federal statutes. That is part of the reason for error that the Court was talking about. It's simply just not applicable to this case. So the state statute was broader in that case than the federal statute. And you're also looking at a different type of statute. I understand that, but the state statute was broader. Assuming the state statute was broader here, what do you make of Singh's admonition where it reads, the elements of the crime of conviction are not the same as the elements of the generic federal offense and they decline to apply the realistic probability test when the state statute's elements are different? Well, first I would turn this Court to its decisions. And Maura, I understand Maura wasn't published, but it's the same type of case where you're looking at drug schedules and the Court said you still have to look to whether or not there's an actual application of the statute that is broader, done by the state. I'd also like to turn the Court to Lewin v. Attorney General of the United States, recently decided by this Court, where again the Court cites Moncrief and looks to the actual application, whether or not Petitioner could cite an instance where the state statute was applied more broadly than the federal one. But I thought the point of Judge Vestrepo was, isn't Singh telling us that if the state statute is broader than the federal, the reason that you don't apply realistic probability is that at that point it's a per se rule, that it's satisfied and you don't need to go through the analysis of actual prosecution. I thought I said persecution, but I said prosecution, yes. And, Your Honor, in agreement with this Court's subsequent decisions in both Maura and Lewin, and also with the Supreme Court's analysis in Moncrief, the government respectfully disagrees, and could actually point to this case as a perfect example as to why realistic probability matters. Here, to the extent that opposing counsel is arguing there's some difference in the statutes, you're not looking to necessarily the face of the elements, which counsel has conceded in this brief are essentially the same. You're looking to the definitions and to cross-references of the definitions. And for something like a child pornography, as opposed to, say, a flat drug schedule in Singh, this Court has routinely looked to how the case law applies the written rules to give us the confines of what these actual elements are. That's where the DOS elements come in. So my concern is GFG and RB look like they strongly support Petitioner's reading that just having pictures of naked children is enough, and the federal statute would require some lascivious exhibition. It would require something genital. So even if realistic probability is required, it looks to me as if Petitioner satisfied that. Why is it that you think those two are distinguishable? Well, I would say one state v. GFG, the possession count deals with, as opposing counsel explained, the footage of unidentified boys and male heavy breathing in the background. However, the Court repeatedly, in comparing those videotapes to the other videotapes, repeatedly emphasized that there was a focus on, quote, the boys' penises. So there, if you look to the case that opposing counsel points to, how would that not be lascivious exhibition of the genitals? It actually illustrates the state doing a fairly narrow application. Well, tell me about that. Now, the definition of lascivious must mean more than merely the picturing of it, right? Because the description in GFG is just focused on the children's genitalia. Lasciviousness must mean something more than that, right? Well, I would say, Your Honor, the Court describes the footage as focused on the boys' penises, but also describes the man's heavy breathing in the background. And if one were to do an analysis under the DOS factors, which is how one would look at lascivious under the federal case law and statute, the Court considers, one, whether the focal point of the visual depiction is on the child's genitalia or pubic area as factor one. Two, the setting. Three, pose, nudity, and other things. But I do want to focus, you know, here we're sort of boring in circles. Because in opposing counsel's brief, the issue is, he says, is that the New Jersey statute doesn't have the same requirement for focus on the pubic area. Yet in the case that he cited when asked to do further briefing with respect to realistic probability, in the one couch dealing with possession of child pornography, the Court emphasizes that the focus is on the little boy's penises. But R.B. has nothing about that. R.B. is just about the stepdaughter in the shower. Well, I would say, one, R.B. has no child possession charge. It's a different statute of conviction. So I would distinguish it that way. And two, even if one was to look at R.B., there's very little information as to what the footage actually has. I do not think it's illustrative of New Jersey applying the statute differently. Again, one, it's pertaining to a different part of the statute entirely. Two, there's just a description of a girl being surreptitiously videotaped while she showered. And arguably, without more information, that is not distinguishable from, say, photo number four in Larkin, which emphasized the breasts and did not emphasize the genitalia. It seems to me like a heads-high-wind-tails-you-lose argument. When it's focused on the genitalia, oh, it's just a general specific case. When it's focused on any daughter in the shower, then it doesn't establish a probability. You need a case to – I don't know how exactly we will apply this. But maybe we have to agree to disagree on that. Before we run out of time, I want to make sure to hear about child abuse because I didn't hear from in your brief or your adversary's brief what the word exploit means. We give you Chevron deference and it says sexual abuse or exploitation. And I can see how taking a video of a child is exploitation. I can see how selling it is exploitation. I can see how prostituting a child is exploitation. But how is merely possessing pictures that somebody else took, assuming no money involved, et cetera, how is that exploitation? When I think about the ways the word exploit is used, you exploit natural resources. You exploit victims of trafficking. You exploit opportunities. But how is possessing a picture that may be at several removes from anyone victimizing a child, how is that exploitation? And the only rationale on the board's decision seemed to be, well, it's part of creating a general market for creating child porn. I get that as a policy matter, but is that what we mean when we use the word exploit? And I do note to the court that this is a de novo review and that historically the agency as well as this court and the Supreme Court have looked to the permanent damage caused by child pornography. I would refer to it being in circulation. I'll point to the court from the board's perspective too, and regarding Alonquin-Rifudo, where the board cites the Supreme Court in acknowledging that child pornography is intrinsically related to the sexual abuse of children because as a permanent record of the child's abuse, the circulation of child pornography continues to harm the child's reputation and emotional well-being. There the board was citing Oskaroff v. Free Speech. I also point the court to its own language in United States v. Knox, where the court talks about the harm and the perpetuity of the harm and the permanence of child pornography. There the court says, since the child's image is permanently recorded, the pornography may haunt him or her for a lifetime because the child will still be aware of the offensive photograph or film in circulation through the masses. And the court goes on to discuss the controlling and production and dissemination of child pornography being of paramount importance because of this type of permanence of the harm. So again, it's not simply the act of photographing the child. The photograph continues to exist. It continues to be in circulation. I do note, too, that the court in Knox acknowledged that the control of the production and dissemination of child pornography is paramount since pedophiles often use child pornography to seduce other children into performing sexual acts. And I did, before my time is up, want to briefly, again, return to this issue of whether or not there's a realistic probability and note that it was not the government's burden here. If the realistic probability test is interpreted as we think it should be, as this court has historically, except for in Sing, which is very much distinguishable from this case, the burden was on Petitioner to show an instance in which the state has applied its statute in a way that's more broad than the federal government has applied the federal statute. And from the two cases cited, Petitioner simply has not done so. Thank you. Thank you. Thank you, Your Honor. Just to touch back on realistic probability, one thing I find interesting about realistic probability is that it's not always used with a categorical approach. In the Esquivel-Katana case in the Supreme Court, they never touched on realistic probability. In a Moreno case that was recently decided in this court, on child porn, whether it was a crime of moral turpitude, this court never touched on realistic probability. I do think it is misplaced because we can look at New Jersey and I guess you just have to believe that New Jersey is going to prosecute under their statute. The government wants a court to believe that New Jersey wouldn't prosecute things that are illegal in New Jersey under their statute. And I don't want to keep saying what I said before, but under a matter of JFJ... the notion of realistic probability of actual prosecution, you just have a per se rule. Because you'd say every state would prosecute whatever crime that in the analysis of the categorical approach was a little beyond the federal. If I was going to make a rule, that might be it. But in Goyes-Alvarez, it was a generic. They were talking about a theft offense in a generic type of way. And that's what the counsel was trying to do. He was trying to use generic definitions. I think when we look at the drug context, it seems to be a little bit over. Sometimes they use it, but it seems at times that we don't use it are the times that we have these really kind of outlier substances. Now I am apologizing. I think it's the Maury case. They're talking about a New York substance of which, please don't ask me to pronounce, was so discreet that they found that there wasn't a realistic probability. I would disagree with that analysis. And I think if it's in the statute in the state, then there is a realistic probability that the state is going to follow it. As we see, sometimes there are laws in this country that are hardly ever prosecuted, and sometimes we have a zero tolerance policy. So to say that there's not a realistic probability, I think, is legal imagination. Two questions. So your adversary says, first of all, that you didn't really preserve a substantive challenge on the child abuse. You just procedurally say the board didn't explain. And second, your adversary says that the burden of proof is actually on you on a number of these issues to show what the correct definition is, to show there is, in fact, a realistic probability, et cetera. Do you disagree on either or both of those points? What's your response? Well, let me take two first. One thing that always bothered me about the realistic probability is what I think is impermissible burdenship. It's always been traditionally the government's burden to show that someone's been convicted of an aggravated felony. Here what happens is, okay, like you're halfway there or you're 75% there. Now it's your turn, and the burden's back on you. I don't think that's permissible. The other thing is, so the case was originally appealed to the board. The board's on the child abuse and aggravated felony. The board sent out a decision and said, it's child abuse. You lose. Go home. And now counsel, he could have done a petition for review at that point in time, and it would have came up here, and likely he would have said, wait, no one talked about aggravated felony. Send it back down. He chose a motion to reopen. The motion reconsidered. The BIA incorporated their decision and gave it there. So I think it was preserved adequately below. Nothing more. Thank you. Thanks so much, counsel. We appreciate the argument. We'll take the matter under advisement.